Merrimack,  }
May 4, 1926. }  .

### A. PERLEY FITCH COMPANY *v.* PHOENIX INSURANCE COMPANY.

A statement by the owner of goods in process of removal from one building to another, made to the agent of the company insuring the goods, that he wants to be protected and covered in the new location, cannot reasonably be construed as an expression of a desire that the goods be unprotected in the old location. The construction of the request depends, not on what the party making it intended, but on what a reasonable person in the position of the agent would understand it to mean.

When the agent of an insurance company, through an unwarranted misunderstanding of instructions given by the insured, attaches to the policy a rider canceling the insurance on the goods in a particular location, it is not necessary that the policy be reformed before action is brought on it by the insured for loss by destruction of the goods in that location.

The erroneous admission of incompetent evidence does not vitiate a verdict, when the same verdict would necessarily be rendered if the evidence were excluded.

ASSUMPSIT, on a fire insurance policy. The case is the same as that reported in 81 N. H. 495. Trial by jury and verdict for the plaintiff. The defendant excepted to the denial of its motions for a non-suit and a directed verdict, to the admission of certain evidence, to remarks of plaintiff's counsel, to the refusal of the court to give

certain requests for instructions, and to the charge. The facts are stated in the opinion. Transferred by *Burque*, J.

*Stevens, Couch & Stevens* and *Robert W. Upton*, for the plaintiff.

*Warren, Howe & Wilson* and *McLane & Davis*, for the defendant.

MARBLE, J. The policy as originally written insured property contained in the Optima building, which was situated on Pleasant street in Concord. At the former trial the evidence was conflicting as to whether the plaintiff's treasurer stated that he intended to remove the goods, or that he had actually done so. On the present transfer neither the words of the treasurer's request nor the circumstances under which it was made are in dispute. It may therefore be treated precisely as though it had been in writing. 2 Williston Con., s. 616; 6 R. C. L. 863; *Steinfield* v. *Mills*, 81 N. H. 152, 153.

The treasurer's language should be interpreted from the standpoint of the defendant's agent to whom it was addressed, and the reasonableness or unreasonableness of the construction which he placed upon it could in no way depend on uncommunicated facts. *Gale* v. *Insurance Co.*, 41 N. H. 170, 174. The test was not what the treasurer intended his words to mean but what a reasonable person in the position of the agent would have understood them to mean.

Since the standard is external and no controversy existed in relation to the overt acts, all evidence of the. plaintiff's actual purpose not called to the defendant's attention was inadmissible. *Woburn Bank* v. *Woods*, 77 N. H. 172; *Lancaster & Jefferson Elec. Light Co.* v. *Jones*, 75 N. H. 172; *Marsh* v. *Insurance Co.*, 71 N. H. 253, 254; *Hale* v. *Taylor*, 45 N. H. 405, 406; *Wadleigh* v. *Janvrin*, 41 N. H. 503, 512.

The fact, however, that such evidence may have been admitted does not vitiate the verdict.

Three days before the fire the plaintiff's treasurer took the policy to the office of the defendant's agent. He testified as follows: "I passed it through the grille of the counter and told them I intended moving our goods from Pleasant street to the new location, and I wanted to be protected and covered in the new location."

The defendant in its requests for instructions concedes that what the treasurer said to the agent is not in dispute. This effectually disposes of any claim that it could be found that the treasurer's

testimony on this point was untrue. There is not the remotest suggestion that the treasurer expressed a desire to have the goods uninsured while they continued to remain in the Optima building. The former opinion turns upon the agent's understanding that the goods had already been removed. Nothing of the kind appears in the present case, and to interpret the treasurer's instructions as a positive injunction to cancel the risk in the old location, before the goods had been removed to the new, is to read into his words an order of material importance which neither the words themselves nor the circumstances surrounding their utterance would warrant.

The defendant's argument that the motions for a nonsuit and directed verdict should have been granted because the plaintiff got the "one thing" it called for minimizes the fact that the goods were already insured. The primary meaning of the word "cover" is to overspread (15 C. J. 1339), and a literal compliance with the plaintiff's request was possible without a simultaneous cancellation of the original risk. Indeed, such inclusive protection is usually afforded by a so-called removal rider. 38 A. L. R. 1520.

The defendant knew that the plaintiff was not engaged in the insurance business and that its treasurer was not likely to be versed in the technical terms of that occupation. The fact that he did not call for a removal rider as such was not significant: his words were to be considered in relation to the communicated facts and in their ordinary sense. *Stone* v. *Insurance Co.*, 69 N. H. 438, 441; *Kendall* v. *Green*, 67 N. H. 557.

As thus considered, the only construction which the defendant's agent could reasonably have placed upon them was that the plaintiff desired to extend the protection then enjoyed to the new situation. Under such circumstances, authority to terminate the insurance at Pleasant street before the goods were removed could not be inferred except from language or conduct which was unequivocal.

"The fact . . . that the plaintiff 'wanted the policy transferred to cover the goods in the new building,' clearly shows that the object was to continue the insurance on them after their removal, and appears to me to repel the idea they should be uninsured, in the meantime, while remaining in the place they were in when first insured." *Kunzze* v. *Insurance Co.*, 41 N. Y. 412, 415.

The plaintiff made appropriate motions for a directed verdict on each of the issues raised. The admission of the evidence objected to on the issue of intent could not have harmed the defendant, "since, with this evidence excluded, the remaining evidence demanded

the verdict directed for the plaintiff" on that issue.  *Harmon* v. *Block & Company,* 32 Ga. App. 700.

The contention that before the plaintiff can recover, the policy must be reformed, is untenable.  There was no mutual mistake to be rectified.  *Bellows* v. *Stone,* 14 N. H. 175, 202; *Herbert* v. *Odlin,* 40 N. H. 267, 271.  The agent merely misunderstood the treasurer's request.  Until canceled, or modified by changes mutually agreed to, the original policy, "unaffected by the rider" (81 N. H. 495, 497), remained in force.

The case has been fully tried, and on the uncontroverted facts relating to the issuance of the rider but one conclusion could be reached.  Ordinarily, the remedy for a unilateral mistake is not reformation but rescission.  5 Pom. Eq. Jur., s. 2097.  If an equitable decree is essential to a proper cancellation of the rider, no reason is apparent why it cannot be made at this time.  *State* v. *Company,* 72 N. H. 114, 131; *Tripp* v. *Company,* 69 N. H. 233; *Brooks* v. *Howison,* 63 N. H. 382, 389; *Peaslee* v. *Dudley,* 63 N. H. 220; *Metcalf* v. *Gilmore,* 59 N. H. 417; *Merrill* v. *Perkins,* 59 N. H. 343.

The only issue of fact left for the jury to pass upon was that of acceptance by subsequent conduct.  No objection to the way in which that issue was tried has been pointed out, and no error in relation to the other matters to which exceptions were taken has been suggested or discovered.

*Judgment for the plaintiff.*

All concurred.