Merrimack
No. 85-359

### MIDWAY EXCAVATORS, INC.

v.

### JOHN P. CHANDLER, COMMISSIONER, NEW HAMPSHIRE DEPARTMENT OF PUBLIC WORKS AND HIGHWAYS

October 3, 1986

*Upton, Sanders & Smith,* of Concord (*Robert Upton, II,* on the brief, and *Gilbert Upton* orally), for the plaintiff.

*Stephen E. Merrill,* attorney general (*Michael J. Walls,* assistant attorney general, on the brief, and *Mr. Merrill* orally), for the State.

BATCHELDER, J.    This case involves an alleged mistake in a bid by the plaintiff, Midway Excavators, Inc., on a highway construction project in the town of Franconia. The New Hampshire Department of Public Works and Highways (now the department of transportation) accepted the bid, but refused to reform it to correct the alleged mistake. The plaintiff challenged that refusal in a petition for equitable relief. The Superior Court (*Dickson,* J.) denied the petition, and the plaintiff appealed. For the reasons that follow, we affirm.

In May 1985, the department solicited bids for the project. The notice stated that bids were due on June 6, 1985, at 2 p.m., and that the department's estimate for the job was approximately $8.3 million. On June 6, the plaintiff's officers were engaged in hectic, last minute bid preparation, which is customary in the construction

industry. In preparing the written bid proposal, the plaintiff's chief estimator entered a total bid price of $7,846,067, but failed to write in $525,000 next to the item entitled "mobilization." Thus, the sum of the itemized prices was $7,321,067. The plaintiff's officers did not notice this omission before the bid was submitted, and the bid was read at the bid opening that afternoon. When he discovered the error, the plaintiff's chief estimator informed the department that the total proposal amount was correct. The second lowest bid was $7,955,455, and thus the plaintiff was low bidder.

The next morning, two of the plaintiff's officers met with the commissioner to explain the mistake. At the meeting, the deputy commissioner recalled in passing a similar incident involving a blank item in a bid some twenty years earlier in which a previous commissioner had waived the error and accepted the total bid proposal.

On June 26, the commissioner awarded the contract to the plaintiff at the lower price; i.e., the sum of the itemized prices. Later that day, the plaintiff filed a petition for equitable relief in the superior court, and obtained a temporary restraining order prohibiting the commissioner from requiring it to execute a contract at the lower price, from awarding the contract to the second lowest bidder, and from soliciting new bids.

At an evidentiary hearing on July 3, the plaintiff's chief estimator testified that an inadvertent clerical error resulted in the bid discrepancy. The commissioner testified that the integrity of the bid process and the best interests of the State were his primary concerns in the matter, that he acted pursuant to the department's bid specifications in awarding the contract, and that he was not bound by departmental precedent. The court denied the plaintiff's petition.

Thereafter, the State agreed not to cause the plaintiff to forfeit its bond if the plaintiff chose to rescind the contract. Thus, the plaintiff was faced with the choice of rescinding the bid and reacquiring its bond, or entering into the contract at the allegedly erroneous lower price. On July 22, the plaintiff executed the highway construction contract for a contract price of $7,321,067. The plaintiff subsequently appealed the court's denial of equitable relief.

The plaintiff argues on appeal that (1) the contract should be reformed to correct the clerical mistake; (2) the commissioner abused his discretion in making the award without recognizing and correcting the mistake; (3) the department's failure to develop and apply standards for determining which technicalities it will waive resulted in the denial of the plaintiff's due process right to receive the contract as the lowest responsible bidder; and (4) the commis-

sioner was bound by departmental precedent to accept the total bid price.

We begin by setting out the department's pertinent standard specifications. Section 102.07 of the Standard Specifications for Road and Bridge Construction states that "[p]roposals will be considered irregular and may be rejected . . . [i]f the proposal does not contain a unit price for each pay item listed." N.H. DEPT. PUB. WORKS & HIGHWAYS, STANDARD SPECIFICATIONS FOR ROAD AND BRIDGE CONSTRUCTION (1983) (hereinafter cited as STANDARD SPECIFICATIONS). Section 103.01 states:

> "After the proposals are opened and read, they will be compared on the basis of summation of the products of the quantities shown in the bid schedule by the unit bid prices. The results of such comparisons will be immediately available to the public. In case of a discrepancy between the prices written in words and those written in figures, the prices written in words shall govern. *In case of discrepancy between the total shown in the proposal and that obtained by adding the products of the quantities of items and the unit bid prices, the latter shall govern.*
>
> The right is reserved to reject any or all proposals, to waive technicalities or to advertise for new proposals, if in the judgment of the Commissioner the best interests of the State will be promoted thereby."

*Id.* § 103.01 (emphasis added).

The plaintiff first argues that the court should reform the bid, and therefore the contract, to correct the clerical mistake. It maintains that reformation will prevent an unconscionable loss to the plaintiff and a windfall to the State. To support this contention, the plaintiff relies on authorities from other jurisdictions. *See, e.g., Dick Corp. v. Associated Elec. Co-op., Inc.,* 475 F. Supp. 15 (W.D. Mo. 1979); *Bromley Contracting Co., Inc. v. United States,* 596 F.2d 448 (Ct. Cl. 1979). *See also* 13 S. WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 1548, at 125 (W. Jaeger 3d ed. 1970) ("Knowledge by one party of the other's mistake regarding the expression of the contract is equivalent to mutual mistake"). These authorities, however, are not in accord with New Hampshire law.

■■ In *Erin Food Servs., Inc. v. 688 Props.,* 119 N.H. 232, 237, 401 A.2d 201, 204 (1979), this court stated that "reformation will only be granted when the evidence is *clear* and *convincing* that (1) there was an actual agreement between the parties, (2) there was an agreement to put the agreement in writing and (3) there is a vari-

ance between the prior agreement and the writing." We have also stated that reformation may be proper when an instrument "fails to express the intention which the parties had in making the contract," *Minot v. Tilton,* 64 N.H. 371, 374, 10 A. 682, 684 (1887) (quoting J. POMEROY, A TREATISE ON EQUITY JURISPRUDENCE § 845), and that reformation, absent fraud, requires a mutual mistake, *Franklin Nat. Bank v. Austin,* 99 N.H. 59, 62, 104 A.2d 742, 745 (1954); *Fitch Company v. Company,* 82 N.H. 318, 321, 133 A. 340, 342 (1926).

■■ Moreover, in the case of a unilateral mistake the remedy is rescission, not reformation. *Fitch supra; see Curran Company v. State,* 106 N.H. 558, 215 A.2d 702 (1965); 3 J. POMEROY, A TREATISE ON EQUITY JURISPRUDENCE § 870a (5th ed. 1941). Therefore, the plaintiff in this case, which chose not to exercise its option to rescind the bid and re-attain its bid bond, cannot now seek to reform the bid, and therefore the contract. *See Lemoge Electric v. County of San Mateo,* 46 Cal. 2d 659, 297 P.2d 638 (1956); *Baltimore v. DeLuca-Davis Co.,* 210 Md. 518, 124 A.2d 557 (1956); *Geremia v. Boyarsky,* 107 Conn. 387, 140 A. 749 (1928); Annot., 2 A.L.R. 4th 991 (1980). The plaintiff entered into the contract freely and, absent mutual mistake, the court will not reform it.

In rejecting the plaintiff's argument, we agree with the decision of the California Supreme Court in *Lemoge Electric supra.* The court stated:

"Plaintiff had a remedy which it chose not to exercise that would have relieved it of any hardship that could result from its error. However, instead of rescinding, plaintiff, with full knowledge of its mistake, proceeded to perform the contract, and it cannot now compel defendant to pay the amount which it claims it intended to bid or obtain recovery on a quasi contractual basis as if no contract existed. Such a result would not only be contrary to settled legal principles, but it would also create uncertainty and confusion in the field of competitive bidding."

*Id.* at 665, 297 P.2d at 641.

The plaintiff next argues that the commissioner abused his discretion in failing to correct the bid. It claims that the mistake was a technical error that should have been waived pursuant to the specifications, and that the integrity of the bid system would not have been adversely affected.

The authority of the commissioner to waive technicalities is a general, discretionary power which requires the exercise of informed judgment. The specifications neither define the term "technicality,"

nor elaborate on the kind of technicalities that should be waived. They do, however, contain a prescription for consideration of proposals with discrepancies between the total and itemized prices. *See* STANDARD SPECIFICATIONS, *supra* § 103.01. Since the commissioner followed the specifications, we cannot say that he abused his discretion. Furthermore, the plaintiff did not challenge the validity of the applicable specifications in this case. Therefore, the commissioner's actions under these circumstances were not unlawful.

At the hearing, the commissioner testified that he did not waive the error because the bid was irregular under the specifications, and he did not consider a bid discrepancy of $525,000 to be a minor technicality. The plaintiff disputes this point and argues that a clerical error such as this should be waived. In addressing this dispute, we note that a technicality is a minute formal point or detail brought to bear upon a main issue. WEBSTER'S NEW WORLD DICTIONARY 762 (MacMillan Students ed. 1960). We are not convinced that the $525,000 bid discrepancy in this case is a minor formal detail, and we therefore uphold the commissioner's decision not to waive the error.

■ The commissioner also testified that waiving the error would open the door to undermining the competitive bidding system. The plaintiff counters that waiving the error would not adversely affect the competitive bidding process because its total bid was over $100,000 less than the next lowest bid. It thus reasons that even if the commissioner waived the error and accepted the total bid price, the best interests of the State would be promoted since the price was lower than the other bids. The plaintiff's argument is not persuasive. To allow a contractor that submits a bid with a one-half million dollar discrepancy to claim the benefit of the higher bid, and thereby potentially to choose between its low and high bid, would not promote the integrity of the competitive bidding system, or promote confidence in the department's commitment to the application of controlling specifications. Consequently, we find that the commissioner did not abuse his discretion.

■ The plaintiff further argues that the commissioner's failure to develop standards for determining the type of technicalities the department will waive constituted a denial of the plaintiff's due process right to receive the contract as the lowest responsible bidder. The plaintiff fails, however, to cite any authority to support its alleged due process right, and we refuse to recognize such a right. For the plaintiff to assert a successful due process claim, it must first assert that a protected liberty or property interest is at stake. *Appeal of Plantier*, 126 N.H. 500, 506, 494 A.2d 270, 273

(1985). The hallmark of a legally protected property interest is an individual entitlement grounded in State law. *Id.* The plaintiff in this case may have had a financial interest in receiving the contract at the higher price. It did not, however, have a legally protected property interest. Notwithstanding the language of RSA 228:4, which states that the lowest responsible bidder shall receive the contract, we cannot say that a contractor that submits an irregular bid has a protected property right to receive a State contract.

Furthermore, no statute or common law principle requires the commissioner to define technicalities and set up guidelines for determining when they should be waived. While such administrative action might be helpful, it is not required. The specifications give the commissioner discretion in this area to examine each case individually, and there is nothing illegal in this procedure.

In *Irwin Marine, Inc. v. Blizzard, Inc.*, 126 N.H. 271, 490 A.2d 786 (1985), we upheld the master's imposition of a fairness standard in regard to a municipality's sale of public property, stating that a municipality's discretion in such matters "must be bounded by notions of fairness in order that the public interest and public confidence in governmental actions be upheld." *Id.* at 275, 490 A.2d at 790. We find no unfairness in this case because the State offered the plaintiff the choice of rescinding its low bid and reacquiring its bid bond, or entering into the contract at the lower price. In this case, unlike in *Irwin Marine*, the plaintiff was not deprived of his interest in the contract.

Finally, the plaintiff argues that the commissioner was bound by departmental precedent to correct the bid. The plaintiff refers to a similar incident in 1965 when a previous commissioner accepted a total bid proposal rather than the lower sum of the itemized prices in the bid. This argument merits only brief consideration. First, this court has stated that "[t]he law has never bound commission discretion by a rigid adherence to stare decisis." *Vautier v. State*, 112 N.H. 193, 196, 291 A.2d 612, 614 (1972). Second, the specifications were amended after 1965 to address the particular facts of cases such as this, and the amended specifications strip the previous incident of its precedential value. Thus, the commissioner was not bound by departmental precedent, and his determination under section 103.01 of the specifications was lawful.

Accordingly, we hold that the commissioner did not abuse his discretion in awarding the contract to the plaintiff at the lower bid price, and we affirm the trial court's denial of equitable relief.

*Affirmed.*

All concurred.